UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IVELIS MORALES,

                              Plaintiff,

        - against -

NORTH SHORE – LIJ, NORTHWELL HEALTH –
SYOSSET HOSPITAL, STEVEN YAMOND,
DENISE SIRAKOWSKI, MICHELLE TRAVIS,
SOMAREDDY SNEHALATHA, and CHRISTOPHER
DRAGO,

                              Defendants.
-----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
CV-17-6518 (JS)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Pro se Plaintiff, Ivelis Morales ("Plaintiff" or "Morales"), commenced this action on November 8, 2017, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., against Defendants Northwell Health – Syosset Hospital, North Shore – LIJ (the "Hospital"),[1] Steven Yamond ("Yamond"), Denise Sirakowski ("Sirakowski"), Michelle Travis ("Travis"), Somareddy Snehalatha ("Snehalatha"), and Christopher Drago ("Drago"), alleging discrimination and retaliation on the basis of disability.

      Before the Court, upon referral by the Honorable Joseph F. Bianco for Report and Recommendation, (Docket Entry ("DE") [18]),[2] is the motion to dismiss Plaintiff's Complaint made by Defendants Hospital, Travis and Drago (collectively, "Defendants"), pursuant to Rules

---

[1] While Plaintiff names North Shore – LIJ and Northwell Health – Syosset Hospital as two separate Defendants in her Complaint, they are in fact one and the same Defendant, and will be referred to as such by the Court.
[2] Judge Bianco recused himself from this action on January 11, 2019, at which time it was assigned to Judge Seybert. (DE [19].)

1

4, 8, 10, 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. (DE [15].) To date, Defendants Yamond, Sirakowski and Snehalatha have not appeared in this action and, accordingly, are not parties to the within motion to dismiss. For the reasons set forth below, it is respectfully recommended that Defendants' motion be granted, and that the Complaint, as alleged against the Hospital, Travis, and Drago, be dismissed in its entirety.

BACKGROUND

The facts set forth below are those set forth in Plaintiff's complaint. As discussed below, they are accepted as true for the purposes of this motion.

Plaintiff commenced employment with the Hospital on or about December 4, 2000 as a Nurses' Assistant. She remains and in that capacity to date. (Compl. at 11.) In September 2011, Plaintiff overheard a co-worker state that she would "rather be American than Spanish," and reported the comment to two supervisors, Travis, a "Manager," and Sirakowski, the Director of Nursing. (Id.) Plaintiff advised Sirakowski that she found the comment to be inappropriate and that it made her uncomfortable since she is of Hispanic descent. (Id. at 12.) Sirakowski agreed to speak to the co-worker, after which, Plaintiff alleges, "everything at work started to change." (Id.)

Plaintiff alleges that a number of discriminatory and retaliatory acts occurred after she made her complaint to Sirakowski and Travis in September 2011, including the following: (1) co-workers who were normally friendly began to give Plaintiff the "cold shoulder" and ignored her, (id.); (2) in October 2011, Sirakowski excluded Plaintiff from a weekly in-service meeting, which she had typically attended in the past, (id.); (3) Plaintiff's holiday bonus in December 2011 was significantly less than in previous years and from December 2012 forward, Plaintiff did not receive any holiday bonus while others did, (id. at 13); (4) Plaintiff was no longer

allowed to sit at her regular work station and was told not to attend morning briefings anymore, (id.); (5) Plaintiff was singled out by Sirakowski for disclosing on an internal survey that she felt racial discrimination was occurring at the Hospital, (id. at 13-14); (6) Plaintiff was given "double the work" when she was assigned to do data entry for two departments and to assist co-workers who did not finish their work, (id. at 14); (7) in December 2012, Plaintiff's work station was again moved, this time to the booking department, which is located in the basement of the Hospital, (id.); (8) in June 2013, Plaintiff did not receive a birthday gift from her co-workers, which had always been customary, (id.); (9) Plaintiff's work station was again moved in January 2014, (id. at 16); (10) in February 2014, Plaintiff's locker was reassigned, directly next to the co-worker about which Plaintiff had complained in September 2011, (id.); (11) in March 2014, Sirakowski advised Plaintiff to no longer make photocopies of medical records, which constituted a change in the way Plaintiff had always done her work, (id.); (12) in or about July 2014, a less senior employee was given a position in the Operating Room unit, where Plaintiff "wished to be placed," but was told there was no room for her in that unit, (id. at 17); and, (13) during 2015, Plaintiff was subjected to an increased work load while other co-workers were not, and was denied requested help to complete her work, (id.).

In June 2015, Plaintiff met with Yamond, who worked in Human Resources, and a union delegate, to discuss the discrimination and retaliation she felt was occurring. (Id.) Plaintiff alleges that shortly after this meeting, she was again subject to further discrimination and retaliation, including the following: (1) her job responsibilities were changed in July 2015, which required her to go to various floors of the Hospital to gather necessary paperwork, (id. at 17-18); (2) in August 2015, Plaintiff's then manager, Snehalatha, advised Plaintiff that she was not performing as well as other employees, despite the fact that she was doing more work than

3

others, (id. at 18); (3) Plaintiff was the only employee to have her work locker taken away in September 2015, requiring Plaintiff to purchase a rolling suitcase to store her personal belongings, (id.); (4) in October 2015, Plaintiff was forced to submit numerous emails before getting requested vacation dates approved by Sirakowski, (id.); (5) in January 2016, Plaintiff was given a verbal warning about her work performance, (id. at 18-19); (6) Plaintiff was asked to attend "impromptu" meetings in June 2016, which caused her "undue stress," (id. at 20); (7) in September 2016, Plaintiff and a co-worker were suspended for three days without pay for fighting, (id. at 20-21); and, (8) in October 2016, co-workers did not take up a collection for Plaintiff after her father passed away; yet, a collection as taken up for another co-worker who lost his mother during the same time period. (Id. at 21.)

In September 2013, Plaintiff was diagnosed with fibromyalgia. (Compl. at 15.) While Plaintiff alleges that further discrimination occurred as a result of her disability, she acknowledges that the accommodations she requested – using a pillow, a heating pad, and ear buds to listen to music – were all granted by the Hospital. (Id.) Plaintiff also alleges that a side effect of the medication she takes to treat her fibromyalgia causes her to sometimes repeat herself. (Id. at 16.) According to Plaintiff, on one incident when this happened in March 2014, Sirakowski began taunting her and asked in a "mocking tone," "'how come you keep repeating yourself?'" (Id.) Finally, due to her fibromyalgia, Plaintiff is extremely sensitive to strong scents. (Id. at 19.) Plaintiff advised Sirakowski of this, who subsequently sent an email to all employees instructing them not to wear strongly scented perfumes, colognes and lotions. (Id.) However, Plaintiff alleges that the instruction was never actually enforced and that, on several occasions, co-workers and her manager, Snehalatha, came to work "reek[ing]" of perfume, cologne and lotion. (Id. at 19-20.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 17, 2016, alleging disability discrimination and retaliation. (Compl. at 10.)  On August 15, 2017, the EEOC issued Plaintiff a right to sue letter.  (Id. at 9.) Plaintiff thereafter commenced the within action on November 8, 2017, alleging violations of the ADA and the NYSHRL for failure to promote, failure to accommodate her disability, and retaliation.  (Id. at 4-5.)

Defendants Hospital, Travis, and Drago now move to dismiss all claims alleged against them, based on the following grounds: (1) Plaintiff's claims are time-barred; (2) Plaintiff fails to state a prima facie case of disability discrimination; (3) Plaintiff fails to state a claim for failure to accommodate and for retaliation; (4) proper service was never effected on Defendants Travis and Drago (the "Individual Defendants"); (5) there is no individual liability under the ADA; (6) the Complaint fails to plead any facts to create individual liability under the NYSHRL; and, (7) in the alternative, the Complaint fails to comply with Rules 8 or 10(b).

To date, Defendants' motion to dismiss remains unopposed.  Despite being properly served with both the motion and a Local Civil Rule 12.1 Notice to Pro Se Litigant, (DE [15-2]), Plaintiff has chosen not to refute the arguments set forth in Defendants' motion.  Having summarized the relevant facts, the Court turns to the merits of the motion.

## DISCUSSION

I.    Legal Standards

    A.    Rule 12(b)(5)

Pursuant to Rule 12(b)(5), "a complaint may be dismissed for insufficient service of process."  Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quoting Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp.

5

654, 658 (S.D.N.Y. 1997)); see also Hawthorne v. Citicorp Data Sys., Inc., 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant."). On such jurisdictional matters, the plaintiff bears the burden of proof. See Commer v. McEntee, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003) ("Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service.")

    B.    Rule 12(b)(6)

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555

U.S. at 557).

II.   Construction of a Pro Se Complaint

In light of the fact that Plaintiff is proceeding pro se, her submissions are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and quotation marks omitted). Thus, her Complaint is to be liberally construed, Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that [it] suggest[s]." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation and quotation marks omitted). As noted by the Second Circuit, "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)) (alteration in original).

Despite the liberal construction rules applicable to Plaintiff's papers, her pro se status, however, "does not exempt [her] from compliance with relevant rules of procedural and substantive law." Boddie v. New York State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth, 710 F.2d at 95). Indeed, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and citations omitted) (alteration in original).

"When a motion to dismiss is unopposed," as Defendants' motion is here, "the failure to oppose itself does not justify dismissal." Howard v. City of New York, No. 11 Civ. 5899, 2012 WL 5816976, at *4 (S.D.N.Y. Nov. 14, 2012). Instead, "a court still assumes the truth of a pleading's factual allegations and tests only its legal sufficiency, which the court is capable of

7

determining based on its own reading of the pleading and knowledge of the law." Rios v. Schlein, No. 16-cv-6448, 2017 WL 3671194, at *2 (S.D.N.Y. Aug. 24, 2017).

III.    Service of Process on the Individual Defendants

The Individual Defendants, Travis and Drago, move to dismiss the Complaint against them for insufficient service of process. As set forth below, this Court recommends that this portion of Defendants' motion be granted.

"Before a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). Even where personal jurisdiction over a defendant is proper, the defendant must be properly served with notice of the action. See Flick v. Stewart-Warner Corp., 76 N.Y.2d 50, 56 (1990) (explaining that statutory requirements for service of process "are not mere procedural technicalities but measures designed to satisfy due process requirements of actual notice").

Federal Rule of Civil Procedure 4 governs service of process in federal actions. With respect to the method of service, Rule 4(e)(1) permits service of process in accordance with the state law of the jurisdiction where the court is located. See Fed. R. Civ. P. 4(e)(1). Pursuant to New York State's service rules, service of process may be effected on an individual defendant by (1) delivering the summons to a person of suitable age and discretion at the individual's place of business, "dwelling place or usual place of abode;" and, (2) subsequently mailing a copy of the summons to the individual at their last known address or place of business. N.Y. C.P.L.R. § 308(2). Proof of service must be filed with the Clerk of the Court within twenty (20) days after the later of the two foregoing forms of service, which must be completed within twenty (20) days of each other. See id. Where a defendant has not been served within ninety (90) days after the

complaint is filed, dismissal without prejudice is appropriate. See Fed. R. Civ. P. 4(m).

Plaintiff "bears the burden of proving adequate service," Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005) (citation omitted), and must, "through specific factual allegations and any supporting materials, make a prima facie showing that service was proper." Kwon v. Yun, No. 05 Civ. 1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) (citing cases). The Court may "look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

Here, a review of the docket indicates that while copies of the summonses and Complaint were left with a Hospital employee for Travis and Drago, and returned executed, there is no indication that copies were also mailed to the Individual Defendants at either their last known addresses or places of business, as required by relevant New York law. See N.Y.C.P.L.R. Section 308(2). (DE [11]. Moreover, since Plaintiff has failed to oppose the instant motion, she has similarly failed to make a prima facie showing of adequate service of process, as required by the case law. Pursuant to Rule 4(m), dismissal of the Complaint, without prejudice, as against Travis and Drago, is the appropriate action. While the Second Circuit has interpreted Rule 4(m) to allow courts to permit extensions of the time to serve in situations where service has not been properly effected, see Gerena v. Korb, 617 F.3d 197, 201 (2d Cir. 2010), where, as here as discussed below, the Complaint fails for substantive reasons, in addition to procedural, it should be dismissed, with prejudice, as against Travis and Drago.

IV.   The Majority of Plaintiff's Claims are Time-Barred

Under the ADA, claimants are required to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory or retaliatory act. See 42 U.S.C. § 12117(a).

9

Under the NYSHRL, the statute of limitations is three years, which runs from the date of the alleged discriminatory act. See Villar v. City of New York, 135 F. Supp. 3d 105, 120 (S.D.N.Y. 2015) ("Discrimination claims under the NYSHRL are subject to a three-year statute of limitations.").

As set forth in the facts above, Plaintiff filed her EEOC charge on October 17, 2016 and filed her Complaint in the within action on November 8, 2017, both of which allege claims for disability discrimination and retaliation under the ADA and the NYSHRL. Based on the applicable statutes of limitation, any events upon which Plaintiff bases her ADA claims that occurred more than 300 days prior to October 17, 2016 – i.e., before December 22, 2015 – are time-barred. Similarly, any events upon which Plaintiff bases her NYSHRL claim that occurred more than three years prior to November 8, 2017 – i.e., before November 8, 2014 – are also time-barred.

In light of the foregoing only the following ADA claims are timely: (1) the January 2016, verbal warning as to Plaintiff's work performance; (2) the June 2016, request that Plaintiff attend "impromptu" meetings, which caused her "undue stress;" (3) the September 2016, suspension of Plaintiff and a co-worker for three days without pay for fighting; and, (4) the October 2016, failure of Plaintiff's co-workers to take up a collection for Plaintiff after her father passed away. In addition to the foregoing, the following claims are also timely under the NYSHRL: (1) the July 2015, change in Plaintiff's job responsibilities were which required her to go to various floors of the Hospital to gather necessary paperwork; (2) the August 2015, discussion with Plaintiff's then manager, Snehalatha, who advised Plaintiff that she was not performing as well as other employees, despite the fact that she was doing more work than others; (3) the September 2015, taking away of Plaintiff's work locker, requiring her to purchase a rolling suitcase to store

10

her personal belongings in; and, (4) the October 2015, forcing of Plaintiff to submit numerous emails before getting requested vacation dates approved by Sirakowski.

Despite failing to oppose the within motion, Plaintiff asserts in her Complaint that the continuing violation doctrine should apply here. (Compl. at 4 § 3 ¶ B (stating "[t]his is a continuing violation doctrine case."). Under that doctrine, "if a plaintiff has experienced a 'continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)). A continuing violation may be found "where specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice." Fitzgerald, 251 F.3d at 259 (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)). Where a continuing violation is demonstrated, the plaintiff "is entitled to have a court consider all relevant actions allegedly taken pursuant to the . . . discriminatory policy or practice, including those that would otherwise be time barred." Fitzgerald, 251 F.3d at 359 (citing cases).

As a general matter, "the continuing violation doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Weslowski v. Zugibe, 14 F. Supp. 2d 295, 304 (E.D.N.Y. 2014) (citation omitted); see also Dellutri v. Village of Elmsford, 895 F. Supp. 2d 555, 564 (S.D.N.Y. 2012) ("The continuing violation doctrine is generally viewed with disfavor in the Second Circuit and should be applied only on a showing of compelling circumstances."). Moreover, "discrete . . . acts are not actionable if time-barred, even where they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Rather, "[e]ach

11

discrete discriminatory act starts a new clock for filing charges alleging that act." Id.

Here, Plaintiff offers no argument as to why the continuing violation doctrine should apply to her claims. Rather, Plaintiff merely inserted the phrase in her Complaint, then, as stated above, failed to file any opposition to Defendants' motion, thereby abandoning the argument. See Stinnett v. Delta Air Lines, Inc., 278 F. Supp. 3d 599, 614 (E.D.N.Y. 2017) ("A plaintiff abandons a claim where [s]he raises it in the complaint but remains silent on the issue elsewhere in the record.") (citation omitted) (alteration in original). Notwithstanding, upon careful consideration of the Complaint, this Court finds the continuing violation doctrine inapplicable here. Each of the events delineated in Plaintiff's Complaint are discrete acts, too remote in time from each other to constitute a continuing violation.

Accordingly, this Court recommends that all of Plaintiff's ADA claims prior to December 22, 2015, as well as all of her NYSHRL claims prior to November 4, 2014, be dismissed, with prejudice, as time-barred.

IV.     Plaintiff's Discrimination Claims Under the ADA and the NYSHRL

Plaintiff's Complaint alleges ADA and NYSHRL claims for both disability discrimination and failure to provide a reasonable accommodation. For the reasons set forth below, all such claims should be dismissed, with prejudice.

    A.     Disability Discrimination

To establish a prima facie case of unlawful disability discrimination, a plaintiff must show that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability."

Horsham v. Fresh Direct, 136 F. Supp. 3d 253, 261-62 (E.D.N.Y. 2015) (quoting Kinneary v. City of New York, 601 F.3d 151, 155-56 (2d Cir. 2010)).  Disability discrimination claims pursuant to the NYSHRL are analyzed under the same standard.  See Trane v. Northrop Grumman Corp., 94 F. Supp. 3d 367, 376 (E.D.N.Y. 2015), aff'd, 639 Fed. Appx. 50 (2d Cir. 2016).

      i.    The Individual Defendants

As a threshold matter, the Court must address the individual liability of Defendants Travis and Drago under both the ADA and the NYSHRL.  While there is no dispute that the Hospital is covered under both statues, "it is well-established that there is no individual liability under the ADA."  Perros v. County of Nassau, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017); see also Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010) (explaining that there is no individual liability under the ADA); Cohn v. KeySpan Corp., 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010) ("Individuals may not be sued in their individual or personal capacity under the ADA").  Accordingly, this Court recommends that the ADA claims asserted against Travis and Drago be dismissed, with prejudice.

Unlike the ADA, the NYSHRL does provide for individual liability.  However, to be individually liable under the NYSHRL, the defendant must meet the definition of an "employer" or be an "aider or abettor," as defined by the statute.  See Cohn, 713 F. Supp. 2d at 160 (citing cases).  Here, there are barely any allegations contained in the Complaint with respect to Travis and Drago, let alone allegations that either discriminated against Plaintiff in any way.  In fact, Travis and Drago are each only mentioned once in the Complaint.  With respect to Travis, Plaintiff alleges that she made her initial complaint about a co-worker's inappropriate comment in September 2011 to both Travis and Sirakowski, which claim, as explained above, is time-

13

barred. (Compl. at 11.) Even putting aside the statute of limitations issue for this claim, there are no allegations in the Complaint that Travis responded to Plaintiff in any way, or took any action whatsoever with respect to Plaintiff's complaint. Nor are there any allegations that Travis personally engaged in any wrongful conduct toward Plaintiff. Similarly, the only allegations in the Complaint pertaining to Drago are that Plaintiff complained to him in September 2015 when her locker was taken away. (Compl. at 18.) As with Travis, there are no allegations concerning Drago's response to Plaintiff's complaint, if any. Nor are there any allegations that Drago personally engaged in any discrimination with respect to Plaintiff. For these reasons, this Court recommends that all ADA and NYSHRL claims against the Individual Defendants, Travis and Drago – including both discrimination and retaliation, which is addressed later in this Report and Recommendation – be dismissed, with prejudice.

    ii. <u>The Hospital</u>

With respect to the ADA and NYSHRL discrimination claims against the Hospital, there is no dispute that Plaintiff suffers from fibromyalgia and is, therefore, disabled within the meaning of both statutes. What is at issue in Defendant's motion is whether Plaintiff suffered any adverse employment action and, if so, whether such actions are causally connected to Plaintiff's disability. The Hospital argues that Plaintiff's Complaint fails to satisfy either element of a disability discrimination claim. This Court agrees.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000) (citing <u>Richardson v. New York State Dep't of Corr. Servs.</u>, 180 F.3d 426, 446 (2d Cir. 1999)). For an employment action to be "materially adverse," the "change in working conditions must be more disruptive than a mere inconvenience or an

alteration of job responsibilities." Galabya, 202 F.3d at 640 (citation and internal quotation marks omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (citation and internal quotation marks omitted). Conversely, "everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions . . . ." Jaeger v. North Babylon Union Free Sch. Dist., 191 F. Supp. 3d 215, 227 (E.D.N.Y. 2016) (quoting Cunningham v. N.Y. State DOL, 326 Fed. Appx. 617, 619 (2d Cir. 2009)).

Here, Plaintiff's timely ADA claims all consist of petty workplace grievances, none of which rise to the level of an adverse employment action. Specifically, Plaintiff complains that she was given a verbal warning about her job performance, she was asked to attend impromptu meetings, which caused her stress, was suspended for three days for fighting with a co-worker, and her co-workers did not take up a collection for her when her father passed away. Other than the suspension, not one of the foregoing claims amounts to an adverse employment action because none resulted in a materially adverse change to the terms and conditions of Plaintiff's employment. "[A] 'bruised ego,' a 'demotion without change in pay, benefits, duties or prestige,' or 'reassignment to [a] more inconvenient job' are all insufficient to constitute a tangible or material adverse employment action." Yin v. North Shore LIJ Health Sys., 20 F. Supp. 3d 359, 373 (E.D.N.Y. 2014) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1988)).

While Plaintiff's suspension in September 2016 could, under some circumstances, constitute an adverse employment action, here, it is undisputed that both Plaintiff and her co-

15

worker were suspended for fighting, not just Plaintiff alone. Moreover, there is nothing alleged in the Complaint to support an inference that Plaintiff's suspension was due to her disability. Rather, it is clear from the Complaint that Plaintiff was suspended for fighting – a legitimate business decision on the Hospital's part. Although Plaintiff claims she was suspended because of her disability, there are absolutely no facts alleged in the Complaint to support a causal connection between Plaintiff's disability and her suspension. Mere conclusory allegations of discrimination are insufficient to state a claim for relief. See Iqbal, 556 U.S. at 680.

Under the NYSHRL, Plaintiff has a few more timely claims that the Court must consider, including the following: (1) Plaintiff's job responsibilities were changed; (2) Plaintiff was advised by Snehalatha that she was not performing well as other employees; (3) Plaintiff's locker was taken away; and, (4) Plaintiff had to send numerous emails before her requested vacation was approved. Again, not one of the foregoing acts rises to the level of an adverse employment action because none constitute "a materially significant disadvantage with respect to the terms of [the plaintiff's] employment." Littlejohn v. City of New York, 795 F.3d 297, 312 n.10 (2d Cir. 2015) (quoting Williams v. R.H. Donnelly Corp., 368 F.3d 123, 128 (2d Cir. 2004)) (alteration in original); see also Galabya, 202 F.3d at 640 (noting that examples of an adverse employment action include "a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities") (alteration in original). In addition, as with Plaintiff's ADA claim, the Complaint fails to demonstrate any causal connection between Plaintiff's disability and the foregoing employment actions.

Based on the foregoing, this Court respectfully recommends that Defendants' motion to dismiss be granted and that Plaintiff's disability discrimination claims under both the ADA and the NYSHRL be dismissed, with prejudice.

B.  Failure to Accommodate

Plaintiff's Complaint also states that she is pursuing a failure to accommodate claim. To state such a claim under the ADA, Plaintiff must demonstrate, among other things, that the Hospital had notice of her disability and refused to make a reasonable accommodation. Yin, 20 F. Supp. 3d at 376 (citing Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995)). "Aside from the broader scope of covered disabilities under the New York Executive Law § 296, [a plaintiff's] state law reasonable accommodation claim is governed by the same legal standards as federal ADA claims." Yin, 20 F. Supp. 3d at 376 (citation and internal quotation marks omitted).

Here, far from stating a failure to accommodate, Plaintiff's Complaint sets forth facts in support of the precisely opposite conclusion. Thus, Plaintiff's Complaint states that the Hospital granted every accommodation for her disability that Plaintiff requested – i.e., using a pillow, a heating pad, and ear buds to listen to music. (Compl. at 15.) The Hospital also granted Plaintiff's request to instruct other employees not to wear strongly scented perfumes, colognes and lotions. (Id. at 19.) Accordingly, Plaintiff's failure to accommodate claim fails as a matter of law because the Hospital granted all of her requested accommodations. This Court respectfully recommends that Defendants' motion to dismiss Plaintiff's failure to accommodate claims, under both the ADA and the NYSHRL, be granted and the claims be dismissed, with prejudice.

V.  Plaintiff's Retaliation Claims Under the ADA and the NYSHRL

To state a claim for retaliation under both the ADA and the NYSHRL, a plaintiff must allege that: "(1) she engaged in protected activity; (2) defendant was aware of the activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the

17

adverse employment action." Caputo v. Copiague Union Free Sch. Dist., 218 F. Supp. 3d 186, 194 (E.D.N.Y. 2016) (citing Weixel v. Board of Educ., 287 F.3d 138, 149 (2d Cir. 2002)) (additional citation omitted).

Here, Plaintiff's retaliation claim is premised on her "initial complaint to [the Hospital] in September 2011, concerning racial comments that were made" by a co-worker. (Compl. at 21.) To state a claim for retaliation, Plaintiff needs to sufficiently allege a causal connection between her complaint in 2011 and the allegedly retaliatory acts inflicted upon her. However, having found above that the continuing violation doctrine should not apply in this action, the only timely acts Plaintiff is left with all occurred between November 2014 and December 2015. While "'there is no hard and fast rule for the amount of time that must pass before a causal connection is necessarily broken . . . two years is far longer than' the periods held relevant in many cases, and 'indeed, it is the rare case that finds a plausible claim when nearly a year rather than months have gone by." Raymond v. City of New York, 317 F. Supp. 3d 746, 774 (S.D.N.Y. 2018) (quoting Birch v. City of New York, 184 F. Supp. 3d 21, 32 (E.D.N.Y. 2016)). In fact, "[c]ourts in this circuit 'often find[] a limit at two or three months and almost universally disapprove longer time periods.'" Raymond, 317 F. Supp. 3d at 746 (quoting Adams v. Ellis, No. 09-cv-1329, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012), aff'd, 536 Fed. Appx. 144 (2d Cir. 2013)) (collecting cases). Accordingly, because there is no causal connection between Plaintiff's complaint to the Hospital in 2011 and the retaliatory acts she alleges to have occurred in 2014 and 2015, Plaintiff's Complaint fails to state a claim for retaliation under the ADA and the NYSHRL. Moreover, for the reasons set forth above in connection with Plaintiff's discrimination claims, the retaliatory acts complained of by Plaintiff do not rise to the level of an adverse employment action. For all these reasons, this Court respectfully recommends that

Plaintiff's retaliation claims, pursuant to both the ADA and the NYSHRL, be dismissed, with prejudice.[3]

VI.     Leave to Amend

Although not requested by Plaintiff, since she failed to file any opposition to the within motion, the Court notes the general rule that a court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (citation and quotation marks omitted). Here, however, "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Leave to amend should therefore be denied as futile, and Plaintiff's Complaint should be dismissed with prejudice. See id. (citing Hunt v. Alliance N. Am. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998)); see also Roth v. CitiMortgage Inc., 756 F.3d 178, 183 (2d Cir. 2014) ("Leave to amend need not be granted where the proposed amendment would be futile.").

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion to dismiss, appearing at Docket Entry [15] herein, be granted in its entirety and that all claims against Defendants Northwell Health – Syosset Hospital, Michelle Travis, and Christopher Drago be dismissed, with prejudice.

---

[3] Because the Court finds that Plaintiff's Complaint fails to substantively state a claim, there is no need to reach Defendants' arguments pursuant to Federal Rules of Civil Procedure 8 and 10, particularly in light of Plaintiff's pro se status.

19

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing counsel for Defendants to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Plaintiff at her last known address(es) and to file proof of service on ECF by January 23, 2019. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
January 16, 2019

                                                  /s/ Anne Y. Shields
                                               ANNE Y. SHIELDS
                                               United States Magistrate Judge